IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN R. ANDREWS, et al., | HON. JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 95-1047 (JBS) |
| v. | **MEMORANDUM OPINION** |
| GREGORY HOLLOWAY, et al., | |
| Defendants. | |

**SIMANDLE**, District Judge:

This matter is before the Court in connection with the January 19, 2001 entry of default judgment liability on Plaintiffs' legal malpractice claims against Defendants Scott R. Baker, Esquire ("Baker") and the Scott Baker Firm, P.C. ("Baker Firm") [Docket Items 404, 405].

Plaintiffs have made a motion for partial reconsideration of the Court's January 19, 2001 Opinion and Order seeking a determination of liability on Plaintiff's fraud claims [Docket Item 409], and Plaintiffs additionally seek entry of default judgment damages against Baker and his firm.

The Court convened a default judgment trial[1] on May 9, 2001 with notice thereof having been provided to Defendant Baker [Docket Item 414]. Plaintiffs made written submissions in

---

[1] All Plaintiffs, through counsel, waived their right to a jury trial on the issues relating to liability of quantum of damages. (Tr. 5/9/01 at 22:13-16.)

advance thereof which the Court has considered, together with the testimony of Plaintiff Louis F. Larsen (Tr. 5/9/01 at 23-26) and the testimony of Plaintiff Daniel J. Gross (Tr. 5/9/01 at 37-50). Defendant Baker failed to appear at the May 9, 2001 hearing or make any written submissions in opposition, either before or after the trial.

After hearing argument, the Court granted Plaintiffs' motion for reconsideration, enlarging the basis of liability of Baker and his firm beyond legal malpractice, to include fraud, (Tr. 5/9/01 at 20-21), and the findings herein amplify upon that determination. The Court finds that the same facts that triggered a finding of attorney malpractice in this case also trigger a determination of fraud. Specifically, the Court finds that:

1. Plaintiffs in this case are twenty-seven individuals who invested in a limited partnership, Defendant Continental Rare Coin Fund I, Ltd. ("CRCF I"), in response to a 1988 prospectus issued by Defendant Gregory Holloway ("Holloway"). Holloway was the sole shareholder of CRCF I and served as the firm's investment advisor. The purpose of the limited partnership was to invest in rare domestic coins, capitalized by the $1.7 million dollar investment of the partner plaintiffs. The total investment in CRCF

I, including those investors who are not plaintiffs, was $4 million in 1988.  At the end of 1989, the limited partnership held coins in its inventory worth over $5 million.  The value declined slightly throughout 1990, but still exceeded the original investments as of the end of 1990.  By 1992, the partnership had no value and had ceased operations.  The investor-plaintiffs were not made aware of the true status of the venture until 1994, and they timely filed their Complaint herein in 1995.  See Andrews v. Holloway, No. 95-1047, slip op. at 2 (D.N.J. Nov. 9, 1995).

2. Defendant Scott R. Baker, Esquire, served as counsel to the partnership and the individual partners from 1988 until July 30, 1991.  Baker prepared the limited partnership agreement for CRCF I (Conner Cert. ¶ 3) and advised Holloway on redemption procedures.

3. In 1989, as Baker knew but the Plaintiffs did not, the Continental Companies entered into an oral contract with Charles and Michael Byers (the "Byers") and their corporations, The C.B. Byers Corp. and Byers Numismatic Corp., which contract required the Byers and their corporations to purchase foreign coins on behalf of CRCF I.  (Conners Cert. ¶ 5.)  From March, 1989 until

August, 1990, the Byers purchased foreign coins on behalf of CRCF I.  (Id.)  No later than April 3, 1990, after receiving a letter from Price Waterhouse regarding CRCF I's ownership of foreign coins, Baker became aware that the Continental Companies were involved in the sale of foreign coins, in violation of the Partnership Agreement he himself drafted.  In a letter to Price Waterhouse dated March 22, 1990, Baker stated that the Baker Firm "had not been made aware of . . . any factual basis which may give rise to potential claims or assessments."  (Baker Ex. 28.)

4. On May 30, 1990, Baker sent a letter to investors that proposed an Amended and Restated Partnership Agreement which would allow CRCF I to deal in foreign coins.  (Conner Cert. ¶ 13.)  This letter did not inform investors that Continental Companies had been purchasing foreign coins from the Byers since March, 1989.  In July 1990, Baker received a letter from the attorney for the Byers threatening litigation related to their oral purchasing contract.  (Dixon Aff., Ex. B, Tr. 99:9-12.)  Baker testified during discovery that he does not recall what, if anything, he did in response to the letter.  (Id., Tr. 99:13 to 100:2.)  On November 7, 1990, the Byers filed a fraud and breach of contract

suit in California against Continental Companies. Baker gave advice and counsel to Holloway and CRCF I on that litigation. (Dixon Aff., Ex. B, T 11-9 to 11-12.) On December 14, 1990, Baker and the Byers settled the California suit for $32,500.00. (Dixon Aff., para. 22.) In May 1991, the Continental Companies filed suit against the Byers, alleging fraud and breach of contract. (Id. at 23.) The CRCF I investors were not advised of these suits by Baker or Holloway until July 1991, when a general status letter was sent out. (Dixon Aff., Ex. I.) There were few details about the foreign coin dealings, litigation, or settlement agreement contained in the status letter. (Id.) Baker prepared the letter to the investors which was materially misleading by failing to disclose the scope and harm caused by Holloway's dealings in breach of the investment agreement.

5. On July 30, 1991, Baker advised Holloway that he was resigning as corporate counsel for the Continental Companies. (Dixon Aff., Ex. C., Holloway Ltr.) In the lengthy resignation letter, Baker refers to a series of conversations and communications in which he expressed concern about the dealings of the Continental Companies. Baker acknowledges that he was aware Holloway commingled funds and used CRCF I monies for

personal investments.  (Id. at 1.)  Baker further acknowledges that he was aware that the non-disclosure of such commingling violated securities law.  (Id. at 2.)  Also on July 30, 1991, Baker sent a very brief letter to investors advising only that he was terminating his legal representation of the Continental Companies.  (Dixon Aff., Ex. C, Landrum (Investor) Ltr.)  This investor letter failed to advise investors of the improper and illegal conduct of which he was aware, and which had occurred from 1989 through 1991.  (Id.)

Under New Jersey law, the tort of fraudulent concealment arises in the context of a business transaction when (1) one individual has in his/her possession certain information; (2) the individual intentionally conceals this information from another party to the transaction; and (3) a reasonable person would attach importance to the omission in determining his/her course of action.  See, e.g., In re Reynolds, 193 B.R. 195, 203 (D.N.J. 1996) (discussing fraudulent concealment in the context of the sale of property).

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Restatement (Second) of Torts § 551 (1977); see In re Reynolds, 193 B.R. at 202 (citing Restatement (Second) of Torts § 551). The question of whether a duty exists is a matter of law to be decided by the court. "In actions based on nonfeasance, as is the case here, 'it is necessary to find some definite relation between the parties, of such a character that social policy justifies the imposition of a duty to act.'" City Check Cashing, Inc. v. Manufacturers Hanover Trust Co., 764 A.2d 411, 416-17 (N.J. 2001).

In this case, this Court has previously held that Defendant Baker had a duty to disclose certain information to Plaintiffs.[2] Andrews v. Holloway, No. 95-1047, slip op. (D.N.J. Jan. 19, 2001). Indeed, this duty to disclose formed the basis of the Court's determination of Baker's liability on Plaintiffs' legal malpractice claim. Id. As now explained, the Plaintiffs have proved that the remaining elements of fraud are satisfied as well.

First, Baker, though having a duty to do so, failed to advise Plaintiffs of the lawsuit filed by the Byers against the Continental Companies in November, 1990; failed to advise them of

---

[2] This Court applies the law of the forum, here the law of New Jersey. This result is the same under Texas law. See Washington v. U.S. Dept. Of Housing & Urban Development, 953 F. Supp. 762 (N.D.Tex. 1996) (holding a duty to disclose is owed when a party learns that previous affirmative representations are in fact false); Lewin v. Long, 70 F. Supp. 2d 534 (D.N.J. 1999) (same – applying Texas law).

7

the subsequent settlement in December, 1990; failed to timely advise them of Continental Company's suit against the Byers in May, 1991; and failed to advise investors that the General Partner, Holloway, was commingling funds and taking inappropriate actions with their investment monies including investments in foreign coins.

Second, based on the testimony and affidavits by Plaintiffs, which this Court accepts as true, each Plaintiff would have either sought to withdraw his or her respective interest in the Partnership or instituted litigation against Defendants to liquidate his or her interest during the calendar year 1990 had Defendant Baker been forthcoming with the information relating to the status of the Partnership and the actions of Holloway. (4/17/01 Gross Cert. ¶ 16; Larsen Cert. ¶ 5.)  In other words, the malpractice of the Baker defendants, and the fraud of the Baker defendants, directly and proximately caused damage to Plaintiffs in that Baker's actions gave them a false sense of security in their investments, precluded them from actively participating in litigation that directly impacted their investments, and prevented them from withdrawing their investments after Holloway allegedly commingled funds and committed other misdeeds and deceits against them as investors.

The investment's value declined somewhat during 1990, while Baker's malpractice and fraud continued.  The fund's auditors,

Price Waterhouse, were unable to update audited financial statements by 1990, and the financial records of the Fund were too poorly maintained to permit a precise valuation of each investment.  By April, 1990, Baker became aware of the unauthorized investment in foreign coins, (see Connor Cert. And Tr. 5/9/01 at 13-14,) which Baker concealed.  Meanwhile, one investor, Carl Sempier, had obtained a full redemption in 1990, equal to his share of the appreciated fund, indicating the fund indeed had liquid assets through 1990.  Estimated K-1 forms were issued to the limited partners, including many of the Plaintiffs, indicating the value of the capital accounts as of December 31, 1990.  For Plaintiff Larsen, for example, his capital account was valued at $687,917 as of that date.  (Larsen Cert. Ex. A.)  The balances in the other capital accounts may reasonably be determined as of December 31, 1990 by prorating based upon the value of the K-1's of record.  (Tr. 5/9/01 at 9-13, 43-44.)

Mr. Larsen testified in detail, amplifying his Certification (filed April 11, 2001), confirming his reliance upon Holloway and Baker, including the rosy scenarios painted in their fraudulent communications to the investors.  For example, Baker's failure in 1989 to disclose the fund's dealing in foreign coins mattered, as it would have raised the red flag for Larson who would have sought immediate redemption of his investment.  (Tr. 5/9/01 at 25-27, 34-35.)  Dr. Gross likewise testified to his statements in

the Gross Certification (filed April 18, 2001), and that he was authorized by all other Plaintiffs (other than Mr. Larsen) to speak for them through his testimony at the trial.  (Tr. 5/9/01 at 37.)  He testified that all other Plaintiffs received the letter from Baker in July, 1991 regarding Baker's resignation as partnership counsel, (id. at 39-40,) that he and the other Plaintiffs had no prior knowledge of the fund's investments in foreign coins, or of the agreement with C.B. Byers Corporation in April 1990.  (Id. at 40.)  He and all other Plaintiffs had no knowledge that the fund's chief U.S. gold coin asset – the Amazonian set – was pledged as collateral, in violation of the investment agreement.  (Id. at 40-41.)  Dr. Gross received his estimated partnership Form K-1 for 1990 in or about October of 1991, reflecting a decrease in value from the end of 1989.  (Id. at 42-43.)  Dr. Gross spoke with Baker or his office after receiving Baker's resignation letter in July, 1991, and Baker simply referred him to Holloway.  (Id. at 44-45, 50.)  Had the true facts been revealed to Dr. Gross, he would have redeemed his shares in 1990, as would the other Plaintiffs.  (Id. at 45-46, 50.)  If redemption had been denied, he would have instituted litigation in 1990, just as he eventually did in 1995, after Holloway finally revealed that the fund ceased doing business in 1994.  (Id. at 46.)

Thus, this Court credits Dr. Gross's testimony that if Baker had told him that unauthorized investments in foreign coins had been made, that the fund was in litigation, that the Amazon set had been pledged as collateral and that the financial irregularities made it impossible to prepare accurate accountings, he would have redeemed his investment in 1990. Based upon the testimony of Larsen and Gross, moreover, the Court concludes that all Plaintiffs have showed similar detrimental reliance and causation of damages arising from Baker's malpractice and fraud.

Based on the above fraudulent conduct, the Court concludes that Plaintiffs are entitled to default judgment damages against Baker and his firm in an amount equal to the value of Plaintiffs' investment in the Partnership as of the date that their investment would have been withdrawn but for concealment of the fraud, December 31, 1990.  The value of Plaintiffs' investments as of that date (and the amounts of losses caused to Plaintiffs by Baker's misconduct) are as follows:

- John R. Andrews: $54,636.46
- Rheba Angle: $71,096.76
- John G. Forshner: $39,835.14
- Paul Freeman: $22,930.00
- Jeffrey B. Gladstone: $45,860.00
- Dr. Daniel Gross: $28,662.50

- Frank D. Houser: $68,790.00
- James E. Isbell, Jr.: $6,879.00
- Estate of Patrick J. Kennedy: $76,012.95
- Hugh B. Landrum, Jr.: $96,907.91
- Dr. Joseph A. Helfrich: $15,615.33
- Norma Jean Langdon: $80,604.68
- Donald E. Lee: $22,930.00
- Niles R. Leeper: $24,323.00
- Alan C. Mayer: $321,960.13
- Francis McGowan: $90,802.80
- Philip Pearlstein, D.O.: $22,798.15
- Martin Rawdin, O.D.: $22,930.00
- Robert O. Safford: $114,650.00
- Stephen E. Woods: $7,864.99
- Robert A. Foster: $34,395.00
- Louis F. Larsen: $687,917.00
- Donald A. McElvaney: $123,025.99
- Judith Laning: $73,312.94
- Robert Morely, M.D.: $22,930.00
- Jack Wilson, DDS: $97,452.50
- Arlis Priest: $28,662.50
- **TOTAL**: **$2,303,785.73**

The Court further finds that Plaintiffs are entitled to pre-judgment interest pursuant to N.J. Court Rule 4:42-11(a) from the date of the institution of this action, March 9, 1995.  That Rule provides that simple rather than compound interest should be used in this calculation, and the Publisher's Note accompanying the Rule lists the applicable interest rates:

- 1995:    3.5%
- 1996:    5.5%
- 1997:    5.5%
- 1998:    5.5%
- 1999:    5.5%
- 2000:    5.0%
- 2001:    5.5%
- 2002:    6.0%
- 2003:    3.0%
- 2004:    2.0%
- **TOTAL:    47%**

Thus, Plaintiffs are entitled to pre-judgment interest of $1,082,779.29.  Added to the amount of the default judgment damages, the total amount of the judgment to be entered against Defendant Baker and the Baker firm and in favor of Plaintiffs is $3,386,564.96.  The accompanying Default Judgment is entered.

| | |
|---|---|
| **May 18, 2005** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |

14